FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y

★ AUG 9 2013 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
INDUSTRIAL QUICK SEARCH, Inc.,
MICHAEL MEIRESONNE,
MEIRSONNE & ASSOCIATES, Inc.,

      Plaintiffs,

  -v-

MILLER, ROSADO & ALGOIS, LLP,
CHRIS ROSADO, and
NEIL A. MILLER, Esq.,

      Defendants.
-----------------------------------------------------------x

**MEMORANDUM & TRANSFER ORDER**

09-CV-1340 (SLT) (JO)

**TOWNES, United States District Judge:**

  Industrial Quick Search, Inc. ("IQS"), Meiresonne & Associates, Inc. ("M&A"), and Michael Meiresonne, president of both companies (collectively, "Plaintiffs"), commenced this diversity action against their former counsel Miller, Rosado & Algois, LLP ("MR&A"), Chris Rosado, and Neil A. Miller, (collectively, "Defendants"), alleging legal malpractice as a tort and as breach of contract. On April 30, 2012, Defendants moved for summary judgment and Plaintiffs moved for partial summary judgment. On June 3, 2013, the parties were ordered to show cause in writing why this action should not be transferred to the District Court for the Southern District of New York ("Southern District"), pursuant to 28 U.S.C. § 1404. (Docket No. 70 ("OSC")). The Court has reviewed the parties' submissions. For the reasons set forth below, the action is transferred to the Southern District.

## I. BACKGROUND

### A. Facts and Procedural History

The Court will briefly recount certain information, but otherwise presumes the parties' familiarity with the relevant facts and procedural history. (See OSC at 2-10).

This action arises out of MR&A's representation of Plaintiffs in a 2002 action before Judge Richard Owen in the Southern District ("Thomas Action"). Meiresonne is the president of M&A and IQS, operating both companies out of the same office space in Michigan. In 2001, an IQS/M&A intern sent an email to Thomas Publishing Company and Product Information Network, Inc. ("Thomas") suggesting that IQS was copying Thomas material. The same year, Thomas served IQS with a cease and desist letter. In 2002, Thomas commenced an action in the Southern District against IQS, M&A, Meiresonne, and other unnamed individuals, alleging that they used the Thomas material to create the IQS website in violation of copyright laws. In 2003, Meiresonne and his co-defendants retained MR&A as new counsel in the Thomas Action. During the course of that litigation and just days before a scheduled document inspection by the Thomas attorneys in Michigan, IQS employees engaged in the destruction of certain documents.

In response, Thomas filed an order to show cause as to why Meiresonne and his co-defendants should not be sanctioned for withholding and intentionally destroying relevant discovery material. Judge Owen held a three-day Spoliation Hearing in February 2006, ultimately finding that Meiresonne and his co-defendants had engaged in intentional destruction of documents "likely critical" to prove the copyright violations and the scope of Meiresonne's involvement. Judge Owen struck the answer and entered default judgment against Meiresonne and his co-defendants as to liability. The parties thereafter entered into a settlement agreement.

Plaintiffs now allege that their attorneys in the Thomas Action failed to advise them properly for the 2003 document production and to offer certain exculpatory evidence and

2

defenses during the Spoliation Hearing before Judge Owen, and that, but for these failings, there would have been no spoliation issue, sanctions, or unfavorable settlement.

### B. Order to Show Cause

As noted, the Court directed the parties to show cause in writing why this action should not be transferred to the Southern District. On June 20, 2012, Plaintiffs filed their opposition to transfer, arguing that the matter could not have been brought in the Southern District because "no defendant resides there, no defendant has its principal place of business there, and neither the substantial part of the events or omissions took place there, nor is there property that is the subject of this action." (Docket No. 71-72 ("Pls. Opp.") at 7).

As a preliminary matter, Plaintiffs are correct that the Court mistakenly located MR&A's principal place of business in New York City, rather than in Mineola, New York. (See OSC at 11). Nevertheless, the Court finds that the action could have been brought in the Southern District and that transfer is appropriate.

## II. DISCUSSION

### A. Federal Venue Statute

Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1) (emphasis added). In this case, all Defendants reside in New York state. The individual defendants, as natural persons, reside in the Eastern District, "the judicial district in which [they are] domiciled." 28 U.S.C. § 1391(c)(1). As a corporate defendant, however, MR&A "shall be deemed to reside . . . in any judicial district in which [it] is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). Accordingly, although MR&A's office is

located in the Eastern District, the venue question turns on whether the Southern District has personal jurisdiction over this corporate defendant.

### B. Personal Jurisdiction

It is well settled that "[a] court sitting in diversity applies the law of the forum state in determining whether it has personal jurisdiction over the defendants." Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir. 1996). To determine whether personal jurisdiction exists, the court engages in a two-part inquiry: "[f]irst, it must determine whether there is personal jurisdiction . . . under New York state law; second, if New York law provides for personal jurisdiction, the Court must determine whether the assertion of jurisdiction comports with the constitutional requirements of due process." Posven, C.A. v. Liberty Mut. Ins. Co., 303 F. Supp. 2d 391, 396 (S.D.N.Y. 2004).

#### 1. New York Long-Arm Statute

##### a. N.Y. C.P.L.R. § 302(a)(1)

New York's long-arm statute authorizes personal jurisdiction over non-domiciliaries under several circumstances. Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 2009 (2d Cir. 2001) (citing N.Y. C.P.L.R. § 302(a)). For example, under § 302(a)(1), "a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." Additionally, "the claim must 'arise from' the transaction of business within the state." Agency Rent A Car, 98 F.3d at 29. New York courts have made clear that "[a]lthough it is impossible to precisely fix those acts that constitute a transaction of business . . . it is the quality of the defendants' New York contacts that is the primary consideration." Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 62 (2d Cir. 2012) (quoting Fischbarg v. Doucet, 849 N.Y.S.2d 501, 505 (2007)). Indeed, "[a] single act

within New York will, in the proper case, satisfy the requirements of section 302(a)(1)." Id. (citing Deutsche Bank Sec., Inc. v. Montana Bd. of Invs., 818 N.Y.S.2d 164, 167 (2006)). In this case, Plaintiffs retained MR&A in the underlying litigation in the Southern District and MR&A (through its attorneys) appeared at a multiple-day Spoliation Hearing before Judge Owen. The Court finds that MR&A transacted business in the Southern District. Moreover, Plaintiffs' instant claims against MR&A allege inadequate representation before that court, in general, and at the Spoliation Hearing, in particular. Plaintiffs' claims therefore arise to a reasonable degree from MR&A's transactions in the Southern District.

### b. N.Y. C.P.L.R. § 302(a)(2)

Personal jurisdiction also arguably exists over Defendants under § 302(a)(2), which provides that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . commits a tortious act within the state." In this case, Plaintiffs' "primary claim is for legal malpractice, which, in New York is a 'species of negligence'-i.e., a tort." Latin Am. Fin. Group, Inc. v. Pareja, No. 04 Civ. 10082 (DLC), 2006 WL 2032627, at *7 (S.D.N.Y. July 19, 2006) (quoting Rubens v. Mason, 387 F.3d 183, 189 (2d Cir. 2004)).[1] Plaintiffs argue in opposition to transfer that they have suffered damages because they were "not advised of sophisticated legal concepts of document spoliation, of document retention and of discovery protocols, that are not known to the general public." (Pls. Opp. at 9).

---

[1] Plaintiffs assert claims for legal malpractice "in tort and contract." (Compl. ¶ 1). Although generally a court "evaluates personal jurisdiction separately for each cause of action," Minissale v. Lauria, No. 10-CV-3667 (RJD) (JMA), 2012 WL 3288660, at *1 (E.D.N.Y. Aug. 9, 2012), "New York courts typically view claims for . . . breach of contract as duplicative of a legal malpractice claim," even at the pleadings stage. Pareja, 2006 WL 2032627, at *7 (citing Flutie Bros LLC v. Hayes, No. 04 Civ. 4187(DAB), 2006 WL 1379594, at *7-8 (S.D.N.Y. May 18, 2006) (collecting cases)); see Palmieri v. Biggiani, 2013 WL 3455642, at *4 (N.Y.A.D. July 10, 2013) ("[T]he causes of action alleging . . . breach of contract . . . are duplicative of the cause of action alleging legal malpractice, because they arose from the same facts as the legal malpractice cause of action, and do not allege distinct damages.").

In the complaint, Plaintiffs also assert that at the Spoliation Hearing before Judge Owen, Defendants, <u>inter alia</u>: (1) failed to explain that certain archival web sites would be available to prove infringement, "leading Judge Owen to wrongly conclude that IQS destroyed evidentiary proof both necessary and 'critical'" to the Thomas Action; (2) failed to explain why Meiresonne changed his story regarding historical copying, "leading Judge Owen to wrongly conclude that Mr. Meiresonne lacked credibility"; (3) "deliberately and improperly produced" confidential attorney work product; (4) failed to "establish the irrelevancy of 'Project Ajax,' which opposing counsel . . . erroneously argued was an attempt to purge or 'cleanse' evidence"; (5) failed to establish that IQS documents had already been discarded in the ordinary course of business long before any litigation and "most even before receipt of the initial cease and desist Letter"; (6) failed to offer evidence that the alleged wrongful acts had ceased by February 2002; and (7) stipulated to their clients' alleged acts without consulting them and waived privilege to their detriment. (Compl. ¶ 57). The parties to the Thomas Action settled for $2.5 million. (Compl. ¶¶ 66-67).

Plaintiffs allege that "[a]s a direct and proximate result of the hearing, [they] lost the right to successfully assert valid affirmative Defenses" to the Thomas Action claims. (Compl. ¶ 100). Plaintiffs further contend that they were "effectively compelled to settle the entire matter, solely as a result of the acts and inactions of Defendants in connection with the alleged spoliation and failure to effectively represent Plaintiffs regarding alternative means of proof." (Compl. ¶ 69). The Court need not address the merits of these claims at this time. It is sufficient for purposes of venue that many of these alleged failures occurred during the Spoliation Hearing in the Southern District. Accordingly, the Court finds that the Southern District has personal jurisdiction over MR&A under the terms of § 302(a)(2).

### 2. Due Process

Having determined a statutory basis for personal jurisdiction in the Southern District, "the second step is to analyze whether personal jurisdiction comports with the Due Process Clause of the United States Constitution," an analysis with "two related components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry." Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 164 (2d Cir. 2010).

Under the first inquiry, the court asks whether a defendant "has certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Rogers v. Ecolor Studio, No. 11-CV-4493 (ARR) (RER), 2013 WL 752256, at *4 (E.D.N.Y. Feb. 7, 2013), adopted by 2013 WL 750120 (E.D.N.Y. Feb. 27, 2013), (quoting Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 127 (2d Cir. 2002)) (internal bracketing and ellipses omitted). Where, as here, the "claim arises out of, or relates to, the defendant's contacts with the forum, minimum contacts exist where the defendant 'purposefully availed' itself of the privilege of doing business in the forum and could foresee being 'haled into court' there." Id. (internal bracketing and ellipses omitted). In this case there is a sufficient nexus between the Plaintiffs' claims and the contacts Defendants had with the Southern District such that the Due Process Clause is not offended by requiring Defendants to defend themselves in that forum.

With regard to "reasonableness," the court asks "whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice' – that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." Chloe, 616 F.3d at 164 (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). The Supreme Court has set forth five factors for evaluating reasonableness: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the

forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 568 (2d Cir. 1996) (citing Asahi Metal Industry Co., Ltd. v. Superior Court of Cal., Solano Cnty., 480 U.S. 102, 113-14 (1987)). The application of this test is somewhat mechanical in this case, as there is little difference between the Eastern and Southern Districts with regard to travel and convenience of the parties. As to questions of efficiency and substantive social policies, the Southern District is where the underlying litigation took place and that court made substantial findings of fact relating to Plaintiffs' substantive pending claims. Given MR&A's participation in the underlying litigation, its conduct and connection with the Southern District are such that the firm could reasonably anticipate being haled into court there.

The Court therefore finds that venue is proper in the Southern District under § 1391(b)(1) and (c)(2) because all Defendants reside in New York and MR&A, as a corporate entity, is subject to that court's personal jurisdiction.

### C.     Transfer

As Plaintiffs observe, (see Pls. Opp. at 6), "[d]istrict courts have broad discretion in making determinations of convenience under [§]1404(a) and notions of convenience and fairness are considered on a case-by-case basis." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106 (2d Cir. 2006). Specifically, a court is authorized to transfer any civil action "to any other district or division where it might have been brought" if doing so would convenience the parties and witnesses, and would serve the interest of justice. 28 U.S.C. § 1404(a). Indeed, "a court may sua sponte transfer an action under . . . § 1404(a) after giving both parties notice and an

opportunity to be heard." Bona v. Barasch, No. 01 Civ. 2289 (MBM), 2003 WL 1395932, at *36 (S.D.N.Y. Mar. 20, 2003).

The Court has reviewed Plaintiffs' arguments opposing transfer and has again considered the relevant factors under § 1404(a). (See OSC at 10-11 (citing D.H. Blair, 462 F.3d at 106-07)). As this action could have been brought in the Southern District, and considering the convenience of the parties and witnesses, as well as the familiarity of that court with the underlying litigation and the conduct of counsel – all of which are at issue in this action – the Court directs that the case be transferred to the Southern District.

### III. CONCLUSION

For the reasons set forth above, this action is hereby transferred to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b), 1404(a). Accordingly, the Clerk of Court is directed to transfer this case to the United States District Court for the Southern District of New York. The provision of Rule 83.1 of the Local Rules of the Eastern District of New York which requires a seven-day delay is waived and, upon the transfer of the case, the Clerk of Court shall close this case.

**SO ORDERED.**

/s/(SLT)

SANDRA L. TOWNES
United States District Judge

Dated: August 8, 2013
Brooklyn, New York

9